**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KRISTEN GREEN**                                                                      **PLAINTIFF**

**VS.**                                          **4:20-CV-1489-BRW**

**BAYER CORPORATION, BAYER**
**HEALTHCARE, LLC, BAYER ESSURE,**
**INC., AND BAYER HEALTHCARE**
**PHARMACEUTICALS, INC.**                                                   **DEFENDANT**

<u>**ORDER**</u>

Pending are  Defendants' Motion to Dismiss (Doc. No. 6), Plaintiff's Motion to Amend

(Doc. No. 17), and Defendants' Motion to Stay Discovery (Doc. No. 22).  Plaintiff has

responded[1] and Defendant has replied.[2]  For the reasons set forth below, the Motion to Dismiss is

GRANTED; Plaintiff's Motion to Amend is DENIED; and Defendants' Motion to Stay

Discovery is DENIED as moot.

**I.      BACKGROUND**

Defendants manufacture and sell a female contraceptive device known as Essure.[3]

Essure is a permanent form of birth control that is intended to cause bilateral blockage of the

fallopian tubes.[4]  Defendants designed, marketed, and manufactured Essure to be implanted

---

[1]Doc. Nos. 15,16.

[2]Doc. No. 20.

[3]Doc. No. 2, p. 3.

[4]*Id.*

without anesthesia through a non-surgical outpatient procedure.[5]  Essure had Conditional

Premarket Approval ("CPMA") by the Food and Drug Administration ("FDA").[6]

Plaintiff was implanted with the Essure device in April 2009.[7]  After the procedure, she

began to suffer from severe pain and abnormal bleeding.[8]  In March 2020, she had a

hysterectomy to resolve these issues.[9]

Plaintiff filed the her Complaint bringing three claims against Defendants: (1) negligent

training; (2) negligent risk Management; and (3) breach of express warranty.[10]  Defendants seek

dismissal of all claims because federal law preempts them and they are insufficiently pled.[11]

Plaintiff denies any  federal preemption and seeks leave to amend her Complaint.[12]

## II.    APPLICABLE LAW

To survive a motion to dismiss for failure to state a claim, Plaintiff's allegations must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"[13]  The plausibility requirement is satisfied when the Plaintiff "pleads factual content

---

[5]*Id.*

[6]*Id.* at 4.

[7]*Id.* at 3.

[8]*Id.*

[9]*Id.*

[10]*Id.* at 9, 11.

[11]Doc. No. 6.

[12]Doc. Nos. 15, 16, 17.

[13]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party.[15] However, "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level."[16] The issue is not whether the Plaintiff will ultimately prevail, but whether the Plaintiff is entitled to present evidence in support of her claim.[17]

## III.   DISCUSSION

Congress passed the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA"), to "impose[] a regime of detailed federal oversight" for medical devices.[18] The MDA expressly preempts certain state laws. "[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter."[19]

---

[14]*In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019).

[15]*Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

[16]*Id.*

[17]*Twombly*, 550 U.S. at 583 (citation omitted).

[18]*Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008).

[19]21 U.S.C. § 360k(a).

The United States Supreme Court has set out  a two-part test for applying the express preemption principles from  Section 360k of the MDA.[20]  First, I must determine whether "the Federal Government has established requirements" applicable to a particular device.[21]  Second, I must decide  whether a plaintiff's claims "are based upon [state] requirements with respect to the device that are different from, or in addition to the federal ones, and that relate to safety and effectiveness."[22]  If I answer yes to both questions, the state laws are expressly preempted by the MDA.[23]

However, "§ 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; where the state duties in such a case 'parallel,' rather than add to, federal requirements."[24]  Premarket approval is a federal "requirement" that meets the first prong of the test for § 360k preemption.[25]  Common law negligence and strict liability claims are included in the meaning of "state requirements" subject to federal preemption.[26]

In *Buckman Co. v. Plaintiffs' Legal Committee*,[27] the Supreme Court construed § 337(a) of the MDA—which provides that all actions to enforce FDA requirements "shall be by and in the name of the United States"—"as barring suits by private litigants 'for noncompliance with

---

[20]See *Riegel*, 552 U.S. at 321–22.

[21]*Id.*

[22]*Id.*

[23]*Id.* at 321-23.

[24]*Id.* at 330.

[25]*Id.* at 322–23..

[26]*Id.* at 323-24.

[27]*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

the medical device provisions.' "[28]  The Eighth Circuit has read *Buckman* and *Riegel* together to create a "narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption."[29]  Plaintiff  "must be suing for conduct that violates the FDCA (or else her claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)."[30]

Here, the parties do not dispute that Essure is a "Class III" device, regulated by the MDA, subject to PMA procedures, and granted CPMA by the FDA.  This means that suits by private parties concerning its use will generally be preempted.[31]  Plaintiff must state a claim under a parallel Arkansas law that is based solely on the federal violations to avoid preemption.

### A.    Negligent Training

Plaintiff alleges Defendants "took on an independent duty to train physicians on how to properly use Essure and place the micro-inserts, which failed to abide by FDA training guidelines."[32]  She alleges Defendants "had a duty to abide by the FDA training guidelines for the implanting physicians on how to place Essure using its own delivery system, certify the implanting physicians, and oversee this particular procedure."[33]  Plaintiff assert Defendants breached this duty, and parallel state laws, by failing to train her physicians in "competent

---

[28]*In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) (quoting *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349 n. 4 (2001)).

[29]*Id.* (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).

[30]*In re Medtronic*, 623 F.3d at 1204.

[31]See *Buckman*, 531 U.S. 341 at 349 n.4 (holding that all actions to enforce FDA requirements "shall be by and in the name of the United States") (quoting 21 U.S.C. § 337(a)).

[32]Doc. No. 2, p. 9.

[33]*Id.* at 10.

procedures" and the management of "possible technical issues."[34]  Defendants argue the claims

are preempted because Arkansas law provides no parallel requirement to train, and, alternatively,

Plaintiff has failed to offer factual support for her claims.[35]

      To the extent that Plaintiff claims that Defendants deviated from FDA-approved training

requirements,[36] such claims do not seek to impose obligations beyond those mandated by the

FDA, and are not expressly preempted.  However, Plaintiff must plead a parallel state law cause

of action to avoid implied preemption.

      Plaintiff cites *Anderson v. Mitts*,[37] to support her position that Arkansas law supports

negligent training claims outside of the employee-employer context.  However, that case

discussed the duty imposed on a volunteer babysitter to supervise a child.[38]  The court held that

the babysitter's duty of care did not depend on the status of the child as a licensee on the

property.[39]  The case had nothing to do with training the babysitter, and doesn't apply to the

allegations in this case.

      Plaintiff also points to *Ballinger v. Heritage Log Homes, Inc.*,[40] to support her position

Arkansas law imposes liability to third parties outside of the employee-employer context.  There,

the court held that "that one who gratuitously renders services to another may be subject to

---

[34]*Id.*

[35]Doc. No. 7, p. 16.

[36]Doc. No. 2, pp. 9-11.

[37]185 S.W.3d 154 (Ark. 2004).

[38]*Id.*

[39]*Id.*

[40]No. CA04-333, 2005 WL 165328 at 6 (Ark. Ct. App. Jan. 26, 2005).

liability to a third person for physical harm resulting from his failure to use reasonable care."[41] The court cited the Restatement (Second) of Torts § 324A to support its decision.[42]

Another federal district court considering similar claims involving Essure recently found that where a state's supreme court explicitly adopted § 324A and set specific circumstances for its application, a parallel state law claim for negligent training was present.[43] The court reasoned that "[Defendants] undertook to render services (Essure training) to another (physicians providing the device to their patients). [Defendants] should recognize the training as necessary for the protection of third parties (patients like [Plaintiff]), and [Defendants] are subject to liability to those patients for physical harm resulting from its failure to exercise reasonable care in training the physicians if, for example, its failure to exercise reasonable care increased the risk of such harm to the patients."[44]

Plaintiff contends Defendants assumed a duty when it voluntarily trained physicians. As set out in § 324A and recognized by the Arkansas Supreme Court in *Wilson v. Rebsamen Insurance., Inc.*,[45] "one who voluntarily assumes a duty owed another is liable to a third party injured by a breach of that duty" under Arkansas law.[46] In *Wilson*, the court held that a company's duty to maintain a safe workplace was assumed though a contract by an insurance

---

[41]*Ballinger v. Heritage Log Homes, Inc.*, No. CA04-333, 2005 WL 165328 at 6 (Ark. Ct. App. Jan. 26, 2005).

[42]*Id.*

[43]*Noel v. Bayer Corp.*, No. CV20-27-BLG-SPW, 2020 WL 5038782, at 7 (D. Mont. Aug. 26, 2020).

[44]*Id.*

[45]330 Ark. 687, 957 S.W.2d 678 (1997).

[46]See *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 848–49 (8th Cir. 2001) (declining to extend the rule in *Wilson* to the facts of the case).

company, and an employee who was injured when that duty was breached was allowed to recover damages from the insurance company.[47]  Applying this analysis here may create a parallel state law claim for negligent training.

However, even if I apply *Wilson*, Plaintiff's complaint fails to allege sufficient facts demonstrating Defendants' negligent training were a proximate cause of her injuries. Though the Complaint states Plaintiff was harmed when Defendants failed to adequately train her physician, it offers no facts indicating how that training differed from the FDA-approved requirements and how the alleged differences led to her injuries. The Complaint must show "more than a sheer possibility that [D]efendant[s] [have] acted unlawfully."[48]  Accordingly, Plaintiff's claim relating to negligent training fails to state a claim upon which relief can be granted and is dismissed.

### B.     Risk Management

Count II alleges negligent "risk management," which appears to me to attempt to assert a claim that Defendant did not notify the FDA about problems.  This does not state a valid cause-of-action.  It is based on Defendants' alleged failure to comply with federal reporting and regulatory conditions.[49]  The Complaint cites to a lengthy list of alleged federal violations that involve the alleged failure to make certain reports to the FDA, and various other alleged violations of the CPMA.[50]  Plaintiff asserts Defendants received federal citations for failing to disclose several adverse events.[51]  Plaintiff contends that Defendants failed to disclose 16,047

---

[47]*Wilson v. Rebsamen Insurance., Inc.*, 330 Ark. at 698, 957 S.W.2d at 682-83.

[48]*Ashcroft v. Iqbal*, 556 U.S. at 678.

[49]Doc. No. 2, p. 11.

[50]*Id.* at 8.

[51]*Id.* at 11.

medical device complaints to the FDA.[52]  Plaintiff asserts that Defendants failed to inform the FDA of the problems Essure caused and prevented the FDA from taking necessary corrective actions that led to her injuries.

The FDA requires that all manufacturers or importers of medical devices "shall report[ ] whenever the manufacturer or importer receives or otherwise becomes aware of information that reasonably suggests that one of its marketed devices ... may have caused or contributed to a death or serious injury."[53]  Plaintiff argues that Defendants are liable for failing to report adverse events to the FDA, which she claims is a state law cause of action.[54]

Defendants argue that a claimed violation of the FDCA is enforceable only by the government under 21 U.S.C. § 337(a), and is subject to preemption.[55]  Defendants also point to a decision from the Eighth Circuit holding that the claim that a manufacturer is liable for failing to report adverse events to the FDA is preempted because it is like a "fraud-on-the FDA" claim, and that theory of liability "[is] simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a)."[56]  I agree.

Furthermore, under the "narrow gap" requirement, Plaintiff's risk management claim is valid only  to the extent she seeks to recover for a claimed violation of a traditional state tort law

---

[52]*Id.*

[53]21 U.S.C. § 360i(a)(1).

[54]Doc. No. 16, p. 7.  Plaintiff cited *Wallace v. Broyles*, 331 Ark. 58, 67 (1998) (holding that an "actor [must] reasonably foresee an appreciable risk of harm to others") and Arkansas Model Jury Instruction 1002 that details manufacturers' duty to warn under Arkansas law.

[55]Doc. No. 7, pp. 12-13.

[56]*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liability*, 623 F.3d at 1205-06 (citing *Buckman*, 531 U.S. at 349).

that aligns with a federal requirement.[57]  She  has not alleged any Arkansas requirement that a manufacturer report adverse events to the FDA. Therefore, Plaintiff's negligent risk management claim is impliedly preempted.

Even if the claim was not preempted, Plaintiff has failed to plead a causal link between Defendants' alleged regulatory reporting failures and the allegedly insufficient warnings given to her implanting physicians.  Accordingly, Plaintiff's negligent risk management claim is dismissed.

### C.    Breach of Express Warranty

Plaintiff alleges Defendants falsely advertised and warranted Essure under Arkansas law. Defendants argues the claim for breach of warranty is preempted. .

Ark. Code Ann. § 4-2-313 provides that express warranties include affirmations of fact, promises, descriptions, representations, samples, and models that are "made part of the basis of the bargain."[58]  Under Arkansas law, advertisements and promotional literature can be a part of the basis of the bargain, and constitute an express warranty where they are prepared and furnished by a seller to induce purchase of its products and the buyer relies on the representations.[59]

Plaintiff alleges she relied on certain representations on Defendants's website in determining to have Essure implanted.[60]  However, she fails to allege how the representations were false, or even state what was included on the website.  A statement that they were false is not sufficient.

---

[57]*Id.*

[58]Ark. Code Ann. § 4-2-313.

[59]See *Ciba-Geigy Corp. v. Alter*, 834 S.W.2d 136, 146 (Ark. 1992).

[60]Doc. No. 2, p. 12.

To survive preemption, the express warranties must have gone "beyond" the statements the FDA approved.  Plaintiff has failed to supply any facts whatsoever as to the content of the statements, much less allege that they went beyond the FDA approved statements.  Accordingly, Plaintiff's express warranty claim is dismissed..

### D.    Leave to Amend

Plaintiff has moved to amend her Complaint.  Generally, "leave to amend shall be given freely when justice so requires."[61]  However, "a district court properly denies leave when a proposed amendment would be futile."[62] "An amendment is futile if the amended [complaint] could not withstand a motion to dismiss under Rule 12(b)(6)."[63]

The proposed amended complaint appears to be largely identical to Plaintiff's original complaint, except that it adds claims  for negligent manufacture, strict liability for defective manufacturing, negligent failure to warn, and strict liability for failure to warn, based upon the same facts and statements that formed the basis of the original Complaint's causes of action.

### 1.    Negligent Manufacture and Strict Liability Defective Manufacture Claims

In her proposed Amended Complaint, Plaintiff alleges that the Essure device she had implanted in 2009 contained manufacturing defects that caused her to suffer pain and abnormal bleeding that forced her to have a hysterectomy.[64]

---

[61]*Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 973 (8th Cir. 2018) (citing Fed. R. Civ. Proc. 15(a)(2)).

[62]*Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quotation omitted); *accord Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quotation omitted)).

[63]*Id.*

[64]Doc. No 17-1, pp. 15-22.

The FDCA prohibits the "introduction or delivery for introduction into interstate commerce of any . . . device . . . that is adulterated or misbranded."[65]

The MDA provides that a device is "adulterated" if "the methods used in, or the facilities or controls used for, its manufacture, packing, storage, or installation are not in conformity with applicable requirements" in the FDA's requirements for that device.[66] Plaintiff alleges that Defendants allowed its Essure devices to become adulterated based on information contained in Notices of Violations and Form 483s issued by the FDA.[67] Specifically, she alleges that Defendants "used non-conforming material," "fail[ed] to use pre-sterile and post-sterile cages," "manufactur[ed] Essure at an unlicensed facility, " and "manufactur[ed] Essure for three years without a license."[68]

The MDA provides that a device is "misbranded" if "its advertising is false or misleading in any particular."[69] Plaintiff contends her Essure was "misbranded" because Defendants allegedly used nonconforming materials in manufacturing process and, therefore, the subsequent label attached to the device was misleading.

To escape implied preemption Plaintiff must allege that the irregularities documented in the Notices of Violations and Form 483s resulted in a specific manufacturing defect that caused her injuries. In other words, she cannot state a claim based only on Defendants' adulteration and

---

[65]21 U.S.C.A. § 331(a).

[66]21 U.S.C. § 351(h).

[67]Doc. No. 17-1, p. 4.

[68]*Id.*

[69]21 U.S.C.A. § 352(q).

misbranding of certain Essure devices, because the claim would "exist elusively because of the [MDA] ... requirements."[70]

Plaintiff has failed to allege any specific defect in her Essure device that resulted in her injury. Plaintiff's proposed Amended Complaint offers no description of the "non-conforming material" used in manufacturing the device, or how the use of that material caused a defect in her device. Additionally, the proposed Amended Complaint fails to explain the function of "pre-sterile and post-sterile cages" in the manufacturing process, or how the alleged failure to use these parts impacted her device. Plaintiff fails to offer any facts that explain how Defendants' alleged operation without a license led to any manufacturing defect. Plaintiff fails to allege that the violations identified in the proposed Amended Complaint breached any parallel state law duties.[71]

Plaintiff's claims also fail because she offers only conclusory statements that the alleged nondescript defects caused her injuries. Specifically, she alleges, "[t]hese breaches caused Plaintiff's injuries because as a result of the use of nonconforming and rejected materials in Plaintiff's Essure, it device did not perform as intended causing it to migrate leading to Plaintiff's hysterectomy."[72] Plaintiff also alleges that "[a]s a result of Defendant's violations of Federal Law and PMA Regulations, the Essure device migrated from Plaintiff's fallopian tube resulting in Plaintiff having severe pain, excessive bleeding, and ripping pain whenever she would lay down or shift positions. Eventually, Plaintiff had to undergo a hysterectomy."[73] These

---

[70]*Buckman*, 531 U.S. at 353.

[71]*Buckman*, 531 U.S. at 349 n. 4.

[72]Doc. No. 17-1, p. 18.

[73]*Id.* at 18.

are not the type of factual allegations entitled to the presumption of truth on a motion to dismiss.[74]

Accordingly, because the negligent manufacture and strict liability defective manufacture claims contained in the proposed Amended Complaint would be subject to dismissal as preempted and insufficiently pled the amendment would be futile. Plaintiff's motion to amend the complaint is denied

### 2.    Negligent and Strict Liability Failure-to-Warn Claims

The  proposed Amended Complaint, also alleges Defendant had a duty to disclose numerous consumer complaints about the Essure device and to warn her healthcare providers, and Plaintiff herself. Plaintiff contends that the duty warn under Arkansas law applies to the facts in this case.  However, there is no parallel federal requirement that Defendants had a duty to warn the general public or the medical community, so those claims are expressly preempted because they are "different from, or in addition to," the MDA requirements.[75]  Plaintiff points to no FDA requirement for Defendants to report consumer complaints directly to healthcare providers and consumers, or to update its warnings and labeling as Defendants learned of issues

---

[74]*Ashcroft v. Iqbal*, 556 U.S. at 681.

[75]*In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d at 1205 (holding "[w]here a federal requirement permits a course of conduct and the state makes it obligatory, the state's requirement is in addition to the federal requirement and thus is pre-empted."; see also *Cupek v. Medtronic*, 405 F.3d 421 (6th Cir. 2005) (holding that any state law claim alleging failure to warn patients beyond warnings required by the FDA constitutes different or additional requirements under the pre-market approval ("PMA") process and thus not parallel); *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 236 (6th Cir. 2000) ("to the extent that plaintiff's claim is premised on the adequacy of the warnings reviewed and approved by the FDA, ... the claim is ... preempted").

with the device. Therefore, any claims grounded in Arkansas law making reports and warnings obligatory are preempted.[76]

Accordingly, because the failure-to-warn claims contained in the proposed Amended Complaint would be subject to dismissal as preempted, the amendment would be futile. Plaintiff's motion to amend the complaint regarding the failure to warn claims is denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. No. 6) is GRANTED. Plaintiff's Motion to Amend (Doc. No. 17) is DENIED. Defendants' Motion to Stay Discovery (Doc. No. 22) is DENIED as moot.

IT IS SO ORDERED this 22nd day of February, 2021.


Billy Roy Wilson_____
UNITED STATES DISTRICT JUDGE

---

[76]See *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005) ("Because [21 C.F.R.] § 814.39 permits, but does not require, a manufacturer to provide interim supplemental warnings pending approval by the FDA, a common-law duty to provide such a warning imposes an additional obligation."); see also 21 C.F.R. § 808.1(d)(6)(ii) ("Where ... [a state-law] prohibition has the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement, then the prohibition will be pre-empted if the requirement is different from, or in addition to, a Federal requirement established under the act.")